## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

    **v.**                **CIVIL ACTION NO.** 5:20-cv-00371

**ALL FUNDS SEIZED FROM CITY NATIONAL BANK ACCOUNT ENDING IN 1087, CATS NO. 20-FBI-001392, (APPROXIMATELY $19,894.24 IN UNITED STATES CURRENCY),**

**AND**

**ALL FUNDS SEIZED FROM CITY NATIONAL BANK ACCOUNT ENDING IN 0068, CATS NO. 20-FBI-001397, (APPROXIMATELY $85,100.10 IN UNITED STATES CURRENCY),**

      **Defendants.**

### VERIFIED COMPLAINT OF FORFEITURE

Comes now, the United States of America ("Plaintiff"), by and through its attorneys, Michael B. Stuart, United States Attorney for the Southern District of West Virginia, and Kathleen Robeson, Assistant United States Attorney for the Southern District of West Virginia, and respectfully brings this Verified Complaint (the "Complaint") and alleges as follows in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

Actions, and to the extent applicable 18 U.S.C. §§ 981, 983, 984, and 985, and the Federal Rules of Civil Procedure.

## NATURE OF ACTION

1. This is a civil action in rem brought on behalf of the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), to enforce the provisions for the forfeiture of defendant properties, constituting proceeds of, or which was used or intended to be used in any manner or part to commit or to facilitate the commission of one or more violations of 18 U.S.C. §§ 1343, 1366, 2314, 2315 and 1956.

2. This action seeks forfeiture of all right, title and interest in the above-captioned properties because the properties constitute or are derived from proceeds of mail, wire, and bank fraud in violation of 18 U.S.C. §§ 1343, 1366, 2314, and 2315. The properties also are involved in monetary transactions in violation of 18 U.S.C. § 1956. Specifically, as set forth more fully below, David Blanchard conspired with others, both known and unknown to the United States, to buy stolen mine equipment, transport and re-sell the stolen mine equipment in interstate commerce. David Blanchard advertised and sold pieces of this stolen equipment on eBay. David Blanchard obtained thousands of dollars in fraud proceeds in the defendants in rem, captioned above. Using these illicit proceeds, David Blanchard engaged in numerous transactions in violation of the money laundering laws, including transactions that promoted his illicit activities, namely his wire fraud and schemes to transport and sell the stolen property. David Blanchard also used the accounts to attempt to conceal the true ownership, origin of the funds.

## JURISDICTION AND VENUE

3. Plaintiff brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under

28 U.S.C. §§ 1345 and § 1355(a) because this forfeiture action has been commenced by the United States.

4. This Court has *in rem* jurisdiction pursuant to: (1) 28 U.S.C. § 1355(b)(1)(A), because acts and omissions giving rise to the forfeiture occurred in this district; and (2) 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the property is located within this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omission giving rise to the forfeiture occurred in this district.

## STATUTORY BACKGROUND

6. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or any conspiracy to commit any such violation, is forfeitable to the United States.

7. Pursuant to 18 U.S.C. § 1956(c)(7)(A), the definition of a specific unlawful activity includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

8. 18 U.S.C. § 1961(1)(B) lists, wire fraud in violations of 18 U.S.C. §§ 1343, 2314, and 2315 as specified unlawful activities.

9. Pursuant to 18 U.S.C. § 981(a)(1)(A)-(C), any property, real or personal, which was involved in or facilitated money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956, and property traceable to such property is forfeitable to the United States.

## THE DEFENDANTS IN REM

10. The defendants are all present and future interest in the following funds seized from David Blanchard business's bank accounts (hereinafter, collectively, the "Defendant Accounts").

    a. The first defendant in rem, captioned above, totals to approximately $19,894.24 in funds seized from a City National Bank account ending in 1087 (CATS No. 20-FBI-001392) (hereinafter, "Defendant Account A").

    b. The second defendant in rem, captioned above, totals to approximately $85,100.10 in funds seized from a City National Bank account ending in 0068 (CATS No. 20-FBI-001397) (hereinafter, "Defendant Account B").

11. The Defendant Accounts identified in the paragraph above are presently in the custody of the United States. The Defendant Accounts were previously seized pursuant to a seizure warrant issued by the Southern District of West Virginia.

12. Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the Government will be able to meet its burden of proof at trial are as follows and have been verified by the attached Verification of the Federal Bureau of Investigation task force officer, Jared Brewer.

## OVERVIEW OF THE FRAUD SCHEME

13. During the period relevant to this Verified Complaint for Forfeiture In Rem: David Blanchard (Blanchard) is believed to have engaged in violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 2314 (interstate transportation of stolen property), 18 U.S.C. § 2315 (sale or receipt of stolen goods); 18 U.S.C. § 1366 (a)-(b) (damages or conspires to damage the property of an energy facility) and 18 U.S.C. § 1956 (laundering in monetary transactions in property derived from specified unlawful activity).

14. These violations arise from Blanchard's operation of an interstate transportation of stolen property scheme wherein they purchased stolen mine equipment from their associates, such as Stuart Dotson (Dotson), Roy Bolen (Bolen) and others both known and unknown to the United States. David Blanchard then sold the stolen mine equipment to third-party buyers.

15. Additional violations arise from Blanchard's use of his company to launder their illegal income from the operation of this interstate transportation of stolen mine equipment scheme in violation of 18 U.S.C. §§ 2314-2315. The proceeds from their scheme were deposited into business and personal bank accounts that Blanchard controlled.

16. Dotson and Bolen often stole mining equipment that was still in use. For example, during the spring of 2018, Stuart Dotson and Roy Bolen used a vehicle to pull mining pumps out of the pond where they were operating. Stuart Dotson, Roy Bolen, and other's actions of stealing mining equipment from working mines damaged these mines. Blanchard sometimes even requested specific pieces of mining equipment from their conspirators – which required acts of thievery that damaged the mines.

17. ERP Environmental Fund, Inc. ("ERP") is a West Virginia non-profit corporation engaged in the reclamation of a significant number of former mining permits. Coal which is produced as part of the reclamation process is an important source of revenue for this company. All coal produced by ERP is processed at the Hobet Beth Station plant located in Boone County, WV and the coal is loaded onto CSX trains and sent to various customers in other states. The recent thefts at the Hobet mining operation (hereinafter, "Hobet Mining") resulted in two weeks of lost processing of coal and significant cost to this company. These thefts completely shut down ERP's only processing facility and prevented this company from being able to load coal onto trains.

18. These thefts came close to pushing this company into insolvency, which would have resulted in the loss of employment. Similarly, while the direct costs associated with the theft of coal mining equipment at the Hobet Mining location were significant - $479,731 in lost equipment, $18,000 in labor spent in repairs, and $70,000 due to delayed coal shipments, had the thefts resulted in the bankruptcy of this company, they would have taken approximately $25 million in annual spending out of the local economy in the form of lost wages, employee benefits and money spent with local vendors.

*2019 Mine Thefts*

19. On Tuesday, May 28, 2019, Lt. Andy Perdue of the West Virginia State Police received a phone call from the General Manager of ERP Environmental Fund (also known as Hobet Mining), regarding a theft from their preparation plant. This plant is located adjacent to U.S. 119, near Danville, WV. Hobet Mining's General Manager advised that a number of electric circuit breakers, various size starters[1], and mining cable were stolen from ERP. He further stated that the theft could have occurred between, May 25, 2019 to the early morning hours of May 28, 2019. The theft of these circuits and breakers damaged Hobet Mining because the mine was using these electric breakers and circuits during the course of its regular operations. Thus, the theft of these breakers and circuits prevented the mine from operating as it should and stopped production for some time.

20. On June 3, 2019, there was another theft - most of the circuit breakers and starters replaced from the last theft were stolen from ERP's Preparation Plant at Hobet Mining.

---

[1] The electric circuit breakers and starters assist in powering the plant, preventing coal to be cleaned, processed, and loaded for transport.

21. Investigators later determined that Dotson and Bolen were involved in the thefts from Hobet Mining.

22. On July 15, 2019, Lt. Perdue called Blanchard and asked if he (Blanchard) had recently purchased electronic starters and breakers from Dotson. Blanchard advised that Dotson and other men had been there with items and were attempting to sell them. Blanchard stated that he declined the purchase because he knew Dotson was a thief. Blanchard claimed that he has not sold much mining equipment for the past 8 to 10 years, except to a few select customers. The investigation revealed that Blanchard's statements are inconsistent with the large volume of mining equipment he sells over Ebay.

23. Law enforcement continued to investigate the Hobet Mining thefts, and during the course of the investigation several individuals, including Bolen and Dotson[2] gave statements about their involvement in various coal mine thefts in West Virginia and other states. Specifically, Dotson provided insight to several coal mine thefts in Boone County, including his role as a conspirator in the Hobet Mining thefts over Memorial Day weekend.

24. Dotson also admitted that he and Bolen had stolen numerous pieces of mine equipment since 2012, and sold the stolen mining equipment to Blanchard at ATI Electrical Supply and other business owners throughout the years.

25. Dotson stated that on Memorial Day weekend, several individuals came to his house with stolen mining circuit panels with starters and breakers, as well as other breakers and other starters. Dotson stated that he sold the stolen items to Blanchard at ATI Electrical Supply.

---

[2] Stuart Wayne Dotson has an extensive history that includes state and federal convictions for transferring stolen goods, burglary, grand larceny, interstate transfer of stolen property and threatening a witness. Dotson has admitted to having a previous drug problem to law enforcement officers.

Dotson stated that Blanchard wrote him two checks for the stolen circuitry items.[3] Dotson explained that he would then show the check with the smaller amount to his co-conspirators and shared those proceeds. Dotson admitted he pocketed the larger check for himself.

26. Stuart Dotson stated that the following weekend, that he again received stolen pieces of mining equipment and sold some to Blanchard's business.

27. Blanchard wrote at least thirteen different checks to Dotson during May and June of 2019, which are detailed below:

| Check Number | Date | Amount |
| --- | --- | --- |
| 7970 | May 6, 2019 | $100 |
| 8023 | May 16, 2019 | $75 |
| 8006 | May 2, 2019 | $1,100 |
| 8008 | May 2, 2019 | $125 |
| 8011 | May 9, 2019 | $900 |
| 8039 | May 20, 2019 | $300 |
| 8048 | May 24, 2019 | $300 |
| 8052 | May 28, 2019 | $3,100 |
| 8063 | June 4, 2019 | $2,580 |
| 8064 | June 4, 2019 | $400 |
| 8091 | June 10, 2019 | $200 |
| 8096 | June 13, 2019 | $500 |

---

[3] As will be discussed later, Blanchard's bank records showed multiple checks written by Blanchard to Dotson. Moreover, there are two checks written around the time of the Memorial Day thefts to Dotson – one for a larger amount, and one for a smaller amount of money – which corroborates Dotson's statement.

| 8118 | June 24, 2019 | $200 |

28. Blanchard wrote numerous checks to Dotson and Bolen from January 2015 until June 2019. Blanchard also wrote at least five checks to another cooperating witness. Several of the memo lines on the checks to the cooperating witness reference that these checks were for mining equipment. For example, on January 19, 2017, Blanchard wrote the cooperating witness a check for $1,100 for "size 4/size 5 vacuums."

*BLANCHARD's eBay Sales*

29. Blanchard was previously investigated by the FBI and US Postal Inspection Service for selling stolen mining equipment in 2016. The 2016 investigation revealed that Blanchard made hundreds of sales of mining equipment that generated over $600,000 from May 18, 2016 until October 27, 2016. From eBay records, it appears that Blanchard sold to over fifty different eBay users during that time alone.

30. Blanchard informed Lt. Perdue that he had largely stopped selling mining equipment about 8 to 10 years ago and only sold to a few select customers now. The eBay records contradict this statement.

31. Similarly in October of 2016, a law enforcement officer purchased a piece of mining equipment from Blanchard that the officer knew was stolen.

32. This stolen piece of mine equipment was shipped to an undercover mailbox via the US Mail from the Mabscott, WV post office around October 15, 2016.

33. However, Blanchard still continues to sell a great deal of mine and other electrical equipment online through eBay.

## BLANCHARD USED THE DEFENDANT ACCOUNTS TO
## HOLD AND LAUNDER HIS UNLAWFUL PROCEEDS

34. Defendant Account A was opened on May 18, 2007, with David Blanchard as the authorized signor. This account is used as a business account for ATI Electrical Supply.

35. Even though Blanchard described Stuart Dotson as a thief to Lt. Perdue in July 2019, Blanchard has written numerous checks to Dotson from this business account as described above. Several of the check's memo lines showed that they were payments for mining equipment. Based on the checks to Dotson, Bolen and other cooperating witnesses, Blanchard is using this account to pay his co-conspirators for the stolen mining equipment and the funds in this account are involved in money laundering. Specifically, Blanchard is using the funds in this account to promote his and others' interstate scheme of buying, selling, and transporting stolen mine equipment.

36. As detailed earlier in the affidavit, Blanchard sold a large volume of mining equipment on eBay.

37. Blanchard's eBay sales proceeds from the sales of the stolen mining equipment (and his other inventory) are deposited into a PayPal account. PayPal show that Blanchard has at least three different PayPal accounts that received proceeds from his eBay sales. Blanchard then transfers the funds from these PayPal accounts into his savings account (Defendant Account B), and then from his savings account, (Defendant Account B) into his business account, (Defendant Account A).

38. Defendant Account B was opened on April 24, 2009, authorized signors being David Blanchard.

39. Defendant Account B is used as a pass through account for illicit profits that Blanchard made by selling the stolen mine equipment on eBay as described in Paragraph 37.

Blanchard transferred the eBay profits that were originally deposited into his PayPal accounts into this savings account before they were transferred to Defendant Account A. Several examples of this pattern are described below:

40. On April 26, 2017, Blanchard received a deposit of $3,000 from his PayPal account into Defendant Account B. Blanchard then transferred the $3,000 into Defendant Account A later that same day. From April 24 to April 27, 2017, Blanchard had over 60 sales on eBay. Many of these sales appear to be sales of mining equipment.

41. On April 27, 2018, Blanchard received a deposit of $3,500 from his PayPal account into this Defendant Account B. Blanchard transferred the $3,500 into Defendant Account A later that same day. From April 24 to April 26, 2018, Blanchard had over 60 sales on eBay. Many of these sales appear to be sales of mining equipment.

42. On June 20, 2018, Blanchard received a deposit of $4,500 from his PayPal account into Defendant Account B. Blanchard then transferred $4,500 into Defendant Account A on June 20, 2018. From June 18 to June 20, 2018, Blanchard's PayPal records reflect that he had 50 sales on eBay. Many of these sales appear to be sales of mining equipment.

43. On June 27, 2018, Blanchard received a deposit of $3,000 from his PayPal account into Defendant Account B. Blanchard then transferred $3,000 into Defendant Account A on June 27, 2018. From June 25 to June 27, 2018, Blanchard's PayPal records show he had over 70 sales on eBay. Many of these sales appear to be sales of mining equipment.

44. On August 1, 2019, Blanchard received a deposit of $8,000 from his PayPal account into this savings account. Blanchard then transferred $8,000 from Defendant Account B into Defendant Account A later that day.

45. On August 23, 2019, Blanchard received $3,500 from PayPal into Defendant Account B. Blanchard then transferred $3,500 into his Defendant Account A the same day.

46. On September 13, 2019, Blanchard received a $4,000 PayPal transfer into Defendant Account B. That same day, Blanchard moved the $4,000 from Defendant Account B into Defendant Account A.

47. A portion – if not all – of the money contained in this savings account is composed of the profits from his eBay sales (since Blanchard's eBay account is linked to his PayPal accounts).

48. For the foregoing reasons, the Defendant Accounts are forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) because the Defendant Accounts are composed of proceeds drawn from Blanchard's violations of 18 U.S.C. §§ 1343, 2314, and 2315. The defendant properties are also forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A) because the defendant properties also facilitated and were involved in monetary transactions in violation of 18 U.S.C. § 1956, as alleged in the Complaint.

## CLAIMS FOR FORFEITURE

49. The allegations contained in paragraphs 1 through 48 of this Verified Complaint for Forfeiture in Rem are incorporated herein and made a part hereof.

50. The defendant properties and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 1343.

51. The defendant properties, and all property traceable thereto, are subject to forfeiture as property constituting or derived from, proceeds traceable to a violation of 18 U.S.C. § 1366.

52. The defendant properties, and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 2314.

53. The defendant properties, and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 2315.

54. The defendant properties, and all property traceable thereto, are also subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) as property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956.

55. As a result of the foregoing, the defendant properties and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

## CONCLUSION

56. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title and interest in the defendant properties vested in the United States at the time of the commission of the unlawful acts giving rise to forfeiture has become and is forfeitable to the United States.

WHEREFORE, the United States requests that notice of this action be given to all persons who reasonably appear to be potential claimants to the defendant property; that judgment be entered declaring the defendant properties to be forfeited and condemned to the United States of America for disposition according to law; that plaintiff be awarded its costs and disbursements in this action; and that the Court award such other and further relief as it deems proper and just, including but

not limited to expenses of maintenance and protection of the defendant properties as required by 28 U.S.C. § 1921.

                                                Respectfully submitted,

                                                MICHAEL B. STUART
                                                United States Attorney

By:    /s/Kathleen Robeson
        KATHLEEN ROBESON
        Assistant United States Attorney
        VA State Bar No. 89526
        300 Virginia Street, East
        Room 4000
        Charleston, WV  25301
        Telephone:  304-345-2200
        E-mail: kathleen.robeson@usdoj.gov

## VERIFICATION

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO WIT:

I, Jared Brewer, a task force officer with the United States Federal Bureau of Investigation declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture <u>in rem</u> is based upon reports and information I personally have prepared or gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on June 1, 2020.

_____
Jared Brewer

Taken, subscribed and sworn to before me this 1st day of June, 2020.



_____
Notary Public

My commission expires on April 30, 2021.